*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 24-CV-0503 & 24-CV-0756

MICHAEL BALL, APPELLANT,

V.

DAVID HUBBARD, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(2022-CA-004059-B)

(Carl E. Ross, *Judge*)

(Submitted January 6, 2026                    Decided August 6, 2026)

*Michael Ball*, pro se.[*]

Before BECKWITH, MCLEESE, and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: Michael Ball agreed to sell David Hubbard a house in the District. Hubbard failed to close on the deal, and Ball sued him for breach of contract. After the trial court denied Hubbard's motion to dismiss, Ball's attorney withdrew from representing him, and Ball did not personally participate in the proceedings for several months thereafter. During that time, Hubbard filed an

---

[*]Appellee David Hubbard did not file a brief in this appeal.

unopposed motion for summary judgment, along with an affidavit asserting various facts.

The trial court granted summary judgment in Hubbard's favor, ruling on the uncontested facts that "[t]wo conditions precedent to the contract were not met and as such the contract is unenforceable." The court reasoned that (1) Hubbard never created a limited liability company, or LLC, as expected for purposes of purchasing the property, and (2) Ball did not supply Hubbard with certain required documents under the Tenant Opportunity to Purchase Act (TOPA). Because those two conditions precedent were not met, in the court's view, the contract was unenforceable. In any event, the court reasoned, Hubbard could not be held personally liable for any breach because he signed the sales contract as a mere agent of the unformed LLC. After that ruling, Ball resumed participating in the case and filed a motion to set aside that judgment, which the trial court denied.

Ball now appeals the trial court's grant of summary judgment. We agree with him that the trial court erred when it granted summary judgment in Hubbard's favor. Neither of the failings that the trial court highlighted is properly categorized as a condition precedent under the plain terms of the contract. First, nothing in the contract indicates that the formation of Hubbard's anticipated LLC was a condition precedent to the contract's formation or its performance. While Hubbard averred that

this was the unwritten understanding of the parties, alleged unwritten understandings that contravene the plain terms of an integrated contract—where Hubbard signed on the "Buyer" line, and the contract disavowed any promises outside of the contract's four corners—are no basis for summary judgment. Second, the contract's TOPA provision specifically required Hubbard to notify Ball of any non-compliance and to give Ball three days to cure any defect. This provision is not properly categorized as a condition precedent. It expressly gave Hubbard only a "Right to Void," contingent on notice of the defect and Ball's failure to cure it, and there is no indication that Hubbard ever took the steps necessary to exercise this right. Finally, and contrary to the trial court's reasoning, we cannot say as a matter of law that Hubbard could not be held personally liable for any breach.

We thus reverse and remand the case for further proceedings.

## I. Factual Background

Michael Ball agreed to sell David Hubbard a house located at 221 35th Street in Northeast D.C. for $665,000. When Hubbard failed to pay the agreed-upon sale price by the settlement date, Ball sold the house to another buyer. Ball then sued Hubbard for breach of contract, seeking $26,000 in damages—the difference between the contracted for price and what Ball later sold the property for (after accounting for a credit he extended to the new buyer). Ball's complaint asserted that

he and Hubbard had a valid contract, that all conditions to performance had been satisfied, and that Hubbard's failure to perform breached the contract and was unjustified.

Several things about Ball's contract with Hubbard, which Ball attached to his complaint, are relevant to this appeal. First, the "Buyer" of the property is listed as "221 35th LLC (To Be Formed)" on the first page. Second, Hubbard initialed each page of the contract on the "Buyer" line and signed his name on the final page's "Buyer" line, though "221 35th LLC (To Be Formed)" appears below his signature as the named buyer. Third, the contract includes an integration clause, stating that the contract "contains the final and entire agreement of the parties" unless amended in writing, and that "the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained." Finally, the contract contains an addendum with a "TOPA compliance" requirement. In relevant part, it required Ball to contact the settlement agent either to furnish proof that he was "in compliance" with TOPA—which, among other things, requires sellers to inform their tenants of a priority right to purchase the property, *see* D.C. Code §§ 42-3404.01-3404.16—or "to establish the necessary steps to be in compliance with" TOPA. It further specifies that "TOPA Compliance requires Delivery to the Settlement Agent of specific documentation satisfactory to the title insurance underwriter" and that, if Ball did "not accomplish[] TOPA Compliance" within

thirty days of the contract ratification date, Hubbard "may . . . Deliver Notice that this Contract will become Void" on the third day following delivery of that notice unless the TOPA defect was remedied by then.

Hubbard moved to dismiss the complaint, asserting that he and Ball never had a contract because the contracting parties were Ball and "221 35th LLC (To Be Formed)." Hubbard claimed that he never intended to purchase the property in his personal capacity and that the parties agreed the contract would become "null and void" if the LLC was not formed. Ball argued in opposition that Hubbard was personally liable for breaching the contract, that nothing in the contract suggested it was conditioned on the creation of an LLC, and that Hubbard would be personally liable in any event because a non-existent LLC could not be a party to a contract.

The trial court—at that point Judge Todd E. Edelman—denied Hubbard's motion to dismiss. While the court acknowledged that "221 35th LLC (To Be Formed)" was listed as the "Buyer," it found the most reasonable interpretation of the contract language was that Hubbard signed it as a "promoter" on behalf of the to-be-formed LLC. Because a promoter can be personally liable for breach of contract, and because Hubbard failed to identify language that suggested creating the LLC was a condition to performance, dismissal was unwarranted. Hubbard then filed a counterclaim to recover the $10,000 earnest money deposit he paid to Ball

and alleged that Ball never provided him with certain "TOPA documents as required by law and agreement." Ball countered that he was entitled to keep the deposit as a result of the breach and denied the allegation that he failed to provide any required TOPA documents.

Several months later, Ball's counsel moved to withdraw, and Hubbard moved for summary judgment. Hubbard asserted that two contractual conditions precedent had not been satisfied: (1) 221 35th LLC had not been formed; and (2) Ball had not delivered the required TOPA documents to Hubbard. On the first point, while Hubbard admitted that he was a "corporate promoter" on behalf of the LLC, he claimed that Ball "agreed to bind the corporation alone." Hubbard submitted an affidavit in which he attested that Ball "knew" at "the time of signing" that the LLC was not yet formed and "did not deliver to [him] the [TOPA] documentation as outlined in the sales contract." Hubbard also argued in his summary judgment motion that he was not personally liable in any event because he disclosed his status as a mere agent for the principal purchaser, the to-be-formed LLC. Ball did not file an opposition to Hubbard's motion.

The trial court—then Judge Carl E. Ross—agreed with Hubbard on each of his arguments and granted summary judgment on two grounds: (1) neither of the conditions precedent that Hubbard highlighted was satisfied because "221 35th

Street, LLC, was not incorporated" and "[Ball] failed to deliver the TOPA documents"; and (2) Hubbard could not be personally liable because he told Ball that he was "not personally interested in purchasing the property" and thus "disclosed" his status as an "agent" of a "principal" (the LLC). The trial court also ruled in Hubbard's favor on his breach of contract counterclaim and ordered Ball to repay the $10,000 deposit. The court further directed Ball to pay an additional $15,720 in attorney's fees and costs to Hubbard, as the contract conferred those fees on the "prevailing party" in any legal dispute.

Ball then re-engaged with his case and moved to set aside the judgment. Ball raised a host of counterpoints to the summary judgment motion and the trial court's ruling, and he further explained that he failed to initially oppose that motion because he could no longer afford counsel, he was suffering from depression, he was evicted from his home, and he did not receive the court notices because they were sent to the wrong address. The trial court denied that motion, and Ball now appeals.

## II. Analysis

Ball challenges the trial court's grant of summary judgment in Hubbard's favor and its rulings that Hubbard was entitled to the return of his $10,000 security deposit and attorney's fees and costs. These issues, while distinct, all reduce to whether the trial court was correct to rule on the summary judgment record that the

contract was "unenforceable" because two conditions precedent to Hubbard's performance were not met, and that Hubbard was not personally liable as a mere agent of the to-be-formed LLC listed as the buyer.

Summary judgment is appropriate if a movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Super. Ct. Civ. R. 56(a)(1). When a nonmovant does not respond to a motion for summary judgment, the trial court can treat as conceded the facts in the movant's affidavit in assessing whether there is a genuine dispute of material fact, at least if they are not otherwise countered by record evidence. *See Lynch v. Meridian Hill Studio Apts., Inc.*, 491 A.2d 515, 521 (D.C. 1985) (trial court may "accept the moving party's verified version of the facts if it is not countered with specificity in a timely fashion"). But the trial court cannot treat an unopposed motion as conceded without independently determining if summary judgment is warranted as a matter of law. *See Gant v. Lynne Experience Ltd.*, 325 A.3d 407, 414 n.3 (D.C. 2024). Even when unopposed, "the court must still review the pleadings and other papers to determine whether the moving party is legally entitled to [summary] judgment." *Milton Props., Inc. v. Newby*, 456 A.2d 349, 354 (D.C. 1983). We review a grant of summary judgment de novo, *Murray v. Motorola, Inc.*, 339 A.3d 152, 169 (D.C. 2025), and we must "make certain that the trial judge did not simply deem the

summary judgment motion as conceded," *Hefazi v. Stiglitz*, 862 A.2d 901, 908 (D.C. 2004) (quoting *Milton Props.*, 456 A.2d at 354).

We now consider the trial court's two alternative bases for granting summary judgment to Hubbard: (1) that two conditions precedent were never satisfied; and (2) that in any event, Hubbard is not personally liable for breach of contract because he disclosed his status as an agent of a yet-to-be-formed LLC. Based on the plain terms of the contract and our independent review of the record, *see Steinke v. P5 Sols., Inc.*, 282 A.3d 1076, 1089 (D.C. 2022), we conclude that neither of the two contingencies that the trial court identified was a condition precedent to the performance of this contract, and that Hubbard's theory of nonliability for disclosed agents of nonexistent entities should have been rejected.

*A. The contract did not contain the two averred conditions precedent*

The trial court granted summary judgment to Hubbard based on its assessment that two contractual conditions precedent were not satisfied, to wit, the creation of "221 35th LLC" and Ball's delivery of TOPA documents to Hubbard. This assessment was seemingly drawn from Hubbard's affidavit, which attested that the contract was "null and void" because the LLC was "never formed" and that Ball "did not deliver to [Hubbard] the [TOPA] documentation as outlined in the sales contract." While the trial court could treat the facts underlying those arguments as

conceded given Ball's failure to deny or counter them, it had an independent obligation to examine whether the alleged conditions precedent in fact existed under the contract's terms. And while the trial court seemed to undertake that task, it erred in concluding that these were conditions precedent, as the plain terms of the contract are to the contrary.

We begin by distinguishing between two types of conditions precedent. There are (1) conditions precedent to the *formation* of a contract; and (2) conditions precedent to the *performance* of a contract. *See* 13 Williston on Contracts § 38:7 (4th ed. May 2026 update) ("A condition precedent may relate either to the formation of contracts or to liability under them." (citation omitted)); *Edmund J. Flynn Co. v. Schlosser*, 265 A.2d 599, 600-01 (D.C. 1970) (describing "the confusion in this area of the law" owing to the "dual usage" of the term). "The 'condition precedent' to the formation or existence of a contract is [simply] the mutual assent or agreement of the parties" to be bound by the agreement. *Edmund J. Flynn Co.*, 265 A.2d at 601. The more typically discussed condition precedent is to a contract's performance, in which the contract can be enforced, but one party's duty to perform under it does not arise unless and until some condition is satisfied. *See id.*; *see also Bare v. Rainforest All., Inc.*, 336 A.3d 619, 624 (D.C. 2025) (defining a condition precedent as "an event, not certain to occur, which must occur, unless its non-occurrence is excused,

before performance under a contract becomes due" (quoting *Psaromatis v. Eng. Holdings I, LLC*, 944 A.2d 472, 481 (D.C. 2008))).

Neither the parties nor the trial court disentangled these two theories, but as best we can tell, the trial court ruled that both the creation of the LLC and the delivery of the TOPA documents were conditions to the performance of the contract.[1] That is best evidenced by the fact that Hubbard brought his own breach of contract claim against Ball, the trial court ruled in his favor on that claim, and the trial court further awarded Hubbard attorney's fees and costs "[i]n accordance with the contract," which shifted those to the "prevailing party" in any legal dispute. Both of those rulings presuppose that an enforceable contract was formed, but that Hubbard's duty to perform under it never arose.

At least as to conditions precedent to performance, we have recognized a "presumption in favor of construing doubtful language in a contract as language of

---

[1] Hubbard did make some arguments before the trial court that sound more pertinent to the formation of the contract—for instance, he argued that he and Ball "did not have any meeting of the minds to enter a contract together" because their mutual assent was to bind the to-be-formed LLC as purchaser. But the only view consistent with the trial court's rulings that Ball breached the contract and owed attorney's fees pursuant to it is that a contract existed and Hubbard's duty to perform under it never arose because two supposed conditions to his performance were not fulfilled. So we do not further examine the arguments under a theory that the LLC's creation was a condition to formation, as that was not the theory the trial court ruled upon, and Hubbard has not urged us to consider that alternative theory given his non-participation in this appeal.

promise rather than as language of condition." *Washington Props., Inc. v. Chin, Inc.*, 760 A.2d 546, 549 (D.C. 2000); *see also BSA 77 P St. LLC v. Hawkins*, 983 A.2d 988, 993-94 (D.C. 2009) (defining a promise as "an express or implied declaration that raises a duty to perform and subjects the promisor to liability for breach for failure to do so"). This presumption "protects both parties" by "avoiding the harsh effect of forfeiture which may result from a failure of a condition precedent" and the "consequence that a slight failure to perform wholly destroys all rights under the contract." *Chin*, 760 A.2d at 549. No magic words are needed to create a condition, but words like "if" or "provided that" indicate a promise is "expressly conditional on a specified event." *BSA 77 P St.*, 983 A.2d at 994 (emphasizing the word "if" in finding a promise was conditional). Whether a contractual provision sets forth a condition precedent is a question of law that is to be discerned "from the words [the contracting parties] have employed and, in case of ambiguity, after resort to other permissible aids to interpretation." *Chin*, 760 A.2d at 549; *see BSA 77 P St.*, 983 A.2d at 993 ("The proper interpretation of a contract term is a question of law.").

Based on the language of this contract, the creation of an LLC was not a condition precedent to Hubbard's performance. The only language that references the LLC is the phrase "221 35th LLC (To Be Formed)," which is listed as the "Buyer" of the property on the first page of the contract and below Hubbard's signature on the final page. But merely stating that an entity is "to be formed," and

listing it as the buyer, does not relieve the signatory and guarantor of the contract—in this case, Hubbard—of their contractual obligations under it. Nor does anything else in the contract itself suggest that Hubbard's promise to purchase Ball's house was conditional on creating an LLC: the parenthetical uses no conditional language, and no other provision so much as references the LLC.

To make up for the absence of any contractual language supporting his view, Hubbard pointed the trial court to the uncontested facts in his affidavit. In that affidavit, Hubbard attested: "It was agreed that I personally was not the buyer for this property, which is why my name is not listed as the Buyer," and that the contract became "null and void" when Hubbard failed to form the LLC. The trial court relied on those assertions when concluding that the creation of 221 35th LLC was a condition precedent of the contract. There are three critical flaws with it doing so.

First, crediting a one-sided account of an oral agreement not referenced in the contract conflicts with the contract's integration clause, which states that it contains the "final and entire agreement of the parties and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained."

Second, even if Hubbard could clear that first hurdle, *cf. Howard Univ. v. Good Food Servs., Inc.*, 608 A.2d 116, 127 & n.9 (D.C. 1992) (discussing when an

oral agreement may be binding despite an integration clause), Hubbard did not provide enough details for the trial court to have reasonably concluded that the parties had an enforceable agreement to bind only the LLC and exempt Hubbard from performance and liability. The contract terms were to the contrary, and Hubbard did not explain when the parties reached this parol agreement—e.g., before or after the contract disavowing all parol agreements was executed—what words were exchanged to manifest the agreement, or any other particulars that would have informed whether the alleged oral agreement was binding. His attestations were conclusory and predominantly legal in nature, rather than factual.

Third, even if Hubbard could clear both hurdles so that the creation of the LLC could be read as a condition precedent to this contract's performance, Hubbard's failure to create the LLC *still* would not render the contract nonbinding as to him. That is because the formation of the LLC was entirely within Hubbard's control—he has never contended that it was frustrated by some external event—and a contracting party cannot take any shelter in their intentional decisions not to satisfy conditions to performance. Two well-established and interlocking doctrines make that clear. The first one is the implied covenant of good faith and fair dealing, which inheres in every contract and requires parties to act in good faith to fulfill any conditions therein. *See Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013) (listing "purposeful failure to perform" as an example of "[b]ad faith" that violates

this covenant). It is this implied duty of good faith that renders contracts with conditions within one party's control enforceable in the first place—without that implied duty, the party with control over the condition's fulfillment could simply walk away from the sale without consequence. *See Beavers Serv., Inc. v. Norris*, 470 A.2d 312, 315 (D.C. 1983) (explaining that contracts with conditions within one party's control are enforceable only because "the condition might require the exercise of good faith").

Next there is the related "prevention doctrine," which excuses the non-occurrence of a condition precedent when the non-occurrence is fairly attributable to the promisor's own conduct and allows the other party to enforce the contract as if the condition had been satisfied. *In re Est. of Drake*, 4 A.3d 450, 454-55 (D.C. 2010). As we have previously put it: "It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." *Id.* at 454 (citation omitted); *see also Urb. Masonry Corp. v. N & N Contractors, Inc.*, 676 A.2d 26, 36 n.21 (D.C. 1996) ("[A] contractor whose promissory duty is subject to a condition precedent eliminates that condition if he unjustly prevents its fulfillment. This is true even though he has made no express promise that he will not prevent such fulfillment." (quoting 3 Corbin on Contracts § 770 (1960 & 1994 Supp.))).

As for the second purported condition precedent—Ball's delivery of TOPA documents to Hubbard—the contractual language demonstrates that this was not a condition precedent to performance either. Consider two points. First, the relevant clause of the contract required Ball to deliver certain TOPA documents only "to the Settlement Agent," a neutral third party, not to Hubbard himself. Hubbard's attestation that Ball did not deliver those TOPA documents to *him*, thus, does not establish any failure to fulfill so much as a promise, much less a condition precedent. But we will set this first point aside and charitably read Hubbard's affidavit before the trial court to effectively assert that Ball had not delivered the TOPA documents to him *via* the settlement agent.[2]

The second and fatal problem with this argument is that the requirement that Ball deliver certain TOPA documents is quite expressly not couched as a condition precedent at all. The contract's TOPA requirement contains a provision titled "Buyer's Right to Void," and it sets forth Hubbard's exclusive remedy for Ball's

---

[2] That charitable reading seems merited here given that Ball did not file any opposition to summary judgment or affidavit of his own, and on appeal he contends that he did in fact deliver the TOPA documents to Hubbard, rather than zeroing in on the point we have just made. Indeed, Ball did not home in on most of the points driving this opinion's analysis, so that we might ordinarily direct supplemental briefing from Hubbard on the principles of contract interpretation that we are applying to the contract's terms here. We do not take that step, however, given that Hubbard has never participated in this appeal and has ignored multiple previous briefing orders directing him to file a brief in this appeal.

failure to deliver TOPA documents as follows: "In the event that [Ball] has not accomplished TOPA Compliance, within 30 days following the Date of Ratification . . . [Hubbard] may, at any time thereafter, but prior to [Ball] accomplishing TOPA Compliance, Deliver Notice that this Contract will become Void at 6:00 p.m. on the 3rd day following Delivery of [Hubbard's] Notice," unless Ball accomplishes TOPA compliance before that date and time.

So even assuming Ball failed to provide the necessary TOPA documents, that failure only granted Hubbard a *right to void* the contract, which he could have exercised only if he waited thirty days following the contract ratification date, notified Ball at that point that he intended to void the contract, and gave Ball another three days to cure. This elective, unilateral right to void is quite different from the automatic excusal from performance that the failure to satisfy a condition precedent would have conferred. *See CorpCar Servs. Hou., Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1249-50 (D.C. 2024) (contrasting an "automatic termination" provision with a "right to cancel" provision that was "contingent on the breaching party's opportunity" to cure); *Psaromatis*, 944 A.2d at 482 (contract is "discharged" when a party fails to perform a condition). Nor does any other language suggest we should treat this right to void as a condition precedent to Hubbard's performance. Given the lack of express conditional language in the TOPA provisions and the presumption against construing promissory language as conditional, *Chin*, 760 A.2d at 549, we

conclude that Ball's delivery of TOPA documents to the settlement agent was not a condition precedent to Hubbard's performance under the contract, but a mere promise to perform.

We thus hold that the trial judge's first basis for granting summary judgment to Hubbard—that the contract was not enforceable because neither of the two purported conditions precedent was fulfilled—was erroneous. The contract between Ball and Hubbard did not render the creation of an LLC or the delivery of TOPA documents conditions precedent, and the vague assertions in Hubbard's affidavit were insufficient to establish that the parties intended to be bound by any oral agreements outside the terms of the contract.

### B. The trial court erred in holding that Hubbard was not personally liable as an agent of a disclosed principal

We now consider the trial court's alternative basis for granting summary judgment to Hubbard—that even if Ball and Hubbard had an enforceable contract with all conditions satisfied, Hubbard could not be held personally liable for breaching it because he disclosed his status as an "agent" to a "principal" (the yet-to-be-formed LLC). As the trial court correctly noted, "when his principal is fully disclosed, the agent ordinarily does not incur personal liability." *Resnick v. Abner B. Cohen Advert., Inc.*, 104 A.2d 254, 255 (D.C. 1954); *see also* Restatement (Third)

of Agency § 6.01 cmt. b (Oct. 2024 update) ("An agent who enters into a contract on behalf of a disclosed principal does not become a party to the contract and is not subject to liability . . . unless the agent and the third party so agree."). But this general rule applies only when the principal has legal capacity to contract, and a company that does not exist has no such capacity. *See* Restatement (Third) of Agency § 3.04 cmt. d (defining "existence" as an element of legal capacity for corporation principals); *see also Resnick*, 104 A.2d at 255 (noting that an individual "does not escape liability by purporting to act for a fictitious or nonexistent principal"). The trial court thus erred in accepting that Hubbard "does not incur personal liability under the contract" because he told Ball he was "not personally interested in purchasing the property."

Because 221 35th LLC had no legal capacity to contract when Hubbard signed the sales contract on its behalf, Hubbard was necessarily acting as a "promoter" for the yet-to-be-formed LLC. *See* 12 Williston on Contracts § 35:71 (4th ed. May 2026 update) ("[S]ince it is impossible for the corporation to contract before it comes into existence, the contract is treated as that of the promoter even though the language . . . is appropriate for a contract by the corporation."). The general rule is that promoters are personally liable for contracts they sign on behalf of yet-to-be-formed entities. *See Corto v. Nat'l Scenery Studios, Inc.*, 705 A.2d 615, 624 (D.C. 1997) ("Because it is undisputed that no limited partnership was formed, if [defendant]

signed the contract for a non-existent partnership, she was personally liable."); *Jones v. Health Res. Corp. of Am.*, 509 A.2d 1140, 1146 n.15 (D.C. 1986) ("A promoter, although assuming to act on behalf of a projected corporation and not individually, will be held personally liable on contracts made for the benefit of a corporation which the promoter intends to organize."); *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 38 (D.D.C. 2013) ("[W]hen an individual purports to act on behalf of a corporation and the corporation has not yet been formed, the individual is liable for the debts he incurred." (citing *Robertson v. Levy*, 197 A.2d 443, 447 (D.C. 1964))); *see also* 18 C.J.S. *Corporations* § 110 (2026) ("Generally, when a promoter signs a contract on behalf of a nonexistent principal, the promoter renders him- or herself liable on the contract.").

There is an exception to promoter liability, however, if the other party agrees to bind only the unformed principal to the contract. *See* 18 C.J.S. *Corporations* § 110 ("[W]here the person with whom the contract is made agrees to look to the corporation alone for performance, the promoter incurs no personal liability with respect to the contract."); *see also Frazier v. Ash*, 234 F.2d 320, 326-27 (5th Cir. 1956) (same). Thus, the key question for determining whether Hubbard can be personally liable is whether Ball agreed that only Hubbard's anticipated LLC, and not Hubbard himself, would be bound by the contract. That is very much a disputed factual question that precludes summary judgment in Hubbard's favor—nothing in

Hubbard's affidavit established or even suggested that Ball agreed not to hold Hubbard personally liable if the LLC was not formed. The closest thing to that is when Hubbard attested that Ball knew he was "not personally interested in purchasing the property," and only "interested in purchasing under" an LLC. That is all well and good, but a seller can obviously be aware that a buyer wants to purchase a property through an LLC, while at the same time having no intention or agreement to absolve them personally if they never in fact form the LLC.

An appellate case from Florida is instructive. In *Blue Paper, Inc. v. Provost*, 914 So. 2d 1048 (Fla. Dist. Ct. App. 2005), William Provost contracted with Blue Paper to purchase property, and the contract identified the buyer as "William Provost, on behalf of a Limited Liability Company to be formed under the laws of the State of Florida, and/or assigns." *Id.* at 1049. After Provost sued for specific performance of the contract, Blue Paper argued that Provost could not enforce the contract because he had signed on behalf of a principal and thus was not personally liable under the contract. *Id.* at 1051. The court rejected this argument, noting the "general rule" that "the promoter of a corporation is personally liable on the contracts entered into on behalf of the corporation he is organizing." *Id.* Although the court noted the aforementioned exception for when "the other party knows of the nonexistence of the contemplated corporation and the parties agreed to bind the corporation alone," it found the exception did not apply because Provost "signed the

contract in his personal capacity" and "[n]othing in the contract exempt[ed] Provost from personal liability." *Id.* at 1051-52.

Just as in *Blue Paper*, Hubbard signed the present sales contract in his personal capacity, and nothing in the contract exempted him from personal liability. The only evidence before the trial court that Ball agreed to bind the unformed LLC alone was Hubbard's affidavit and the transcript of a deposition in which Hubbard said he told his agent that he did not want to personally sign the contract. We have already explained why Hubbard's affidavit contained no suggestion that Ball agreed not to hold him personally liable. As for his deposition, Hubbard's comment that he did not want to personally sign the contract is of no moment as it does not speak to Ball's intent not to bind him. And in Ball's deposition, he testified that he believed Hubbard was the buyer after speaking to his agent about the contract. To be sure, Ball admitted he was aware that the LLC had not yet been formed, as the "to-be-formed" qualifier in the contract itself made clear. But this admission in no way suggests that Ball agreed to bind only the LLC if Hubbard unilaterally decided not to form the LLC, as occurred here. *See Vodopich v. Collier Cnty. Devs.*, 319 So. 2d 43, 45 (Fla. Dist. Ct. App. 1975) (promoter is not relieved of personal liability if the other contracting party "merely has knowledge of the nonexistence of the corporate entity for whom the promoter purports to act").

We are thus left with open and material factual questions about whether Ball agreed when he signed his contract with Hubbard that Hubbard would not be personally liable under that contract. The trial court therefore erred by finding that Hubbard was not liable as the agent of a disclosed principal as a matter of law.

## III. Conclusion

For the foregoing reasons, we reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

*So ordered.*